Brett A. Berman (No. 204843)
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
(215) 299-2000
(215) 299-2150 (Fax)
BBerman@FoxRothschild.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUKOIL NORTH AMERICA LLC,<br>a New York Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>R.K. KEYSTONE MOBILE MART, INC.,<br>GURMEET SINGH, A AIRPORT<br>TEXACO, INC., and SWAPNESH SHARMA,<br><br>Defendants. | CIVIL ACTION NO.:<br><br>**COMPLAINT**<br><br>ECF CASE |

NOW COMES the plaintiff, LUKOIL NORTH AMERICA LLC ("Plaintiff" or "LNA"), by its attorneys, Fox Rothschild, LLP, and states its complaint against the defendants, R.K. KEYSTONE MOBILE MART, INC. ("Keystone"), GURMEET SINGH ("Singh"), A AIRPORT TEXACO, INC. ("Airport Texaco"), and SWAPNESH SHARMA ("Sharma"), (collectively, "Defendants").

### NATURE OF THIS ACTION

1.      This is an action for willful trademark infringement and false designation of origin under the United States Trademark Act, (The Lanham Act) 15 U.S.C. §§ 114 (1), 1125(a), brought by the exclusive licensee of the famous name and mark *LUKOIL* for use on and in

connection with gasoline service station and convenience store services. Defendants, Keystone, Singh, Airport Texaco, and Swapnesh Sharma, own and/or operate a retail motor fuel service station located at 3575 Airport Rd., Allentown, PA, which service station is located in the District. LNA is the exclusive licensee of the famous mark *LUKOIL*, registered in the United States Patent and Trademark Office by OAO LUKOIL, LNA's ultimate parent. LNA, through its own efforts and those of its predecessors, has authorized use of the *LUKOIL* brand for service stations throughout the Northeast and in this District. Although Defendants had originally operated their service station as an authorized seller of *LUKOIL* branded motor fuels, the franchise relationship established by LNA and/or LNA's supplier with Defendants has been terminated. Despite this termination, and without LNA's permission or knowledge, Defendants continued to operate the subject service station under the name and federally registered trademark *LUKOIL*, including the large, illuminated *LUKOIL* roadside sign, *LUKOIL* gas pump signage, and all other aspects of the trade dress associated with *LUKOIL* service stations. Upon discovery of this infringing conduct, LNA, through its attorneys, demanded the removal of all the *LUKOIL* branding from Defendants' service station. In response, Defendants removed only some of the *LUKOIL* branding, but have maintained the continuing misrepresentation of their association with *LUKOIL*, thus leaving LNA with no recourse but to seek the protection of this Court to enjoin the continued deception to the public created by this willful and knowing infringement of the valuable *LUKOIL* brand.

**PARTIES AND JURISDICTION**

2.     Plaintiff LUKOIL North AMERICA LLC, is a limited liability company duly organized through and existing laws under the laws of the State of Delaware with its principal

place of business located at 505 Fifth Avenue, New York, New York 10017. Plaintiff does business throughout the United States, including this District.

3. Defendant R.K. Keystone Mobile Mart, Inc., is a company duly organized through and existing under the laws of the Commonwealth of Pennsylvania. Upon information and belief, Keystone owns and/or operates the service station located at 3575 Airport Rd., Allentown, Pennsylvania 18109, which lies within the District.

4. Defendant Gurmeet Singh is an individual and, upon information and belief, is a resident of the District. Upon information and belief, Mr. Patel operates the retail motor fuel service station located at 3575 Airport Rd., Allentown, Pennsylvania 18109, which lies within the District.

5. Defendant A Airport Texaco, Inc., is a company duly organized through and existing under the laws of the Commonwealth of Pennsylvania. Upon information and belief, Keystone owns and/or operates the service station located at 3575 Airport Rd., Allentown, Pennsylvania 18109, which lies within the District.

6. Defendant Swapnesh Sharma is an individual and, upon information and belief, is a resident of the District. Upon information and belief, Mr. Sharma operates the retail motor fuel service station located at 3575 Airport Rd., Allentown, Pennsylvania 18109, which lies within the District.

7. The Court has original jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1338(a), and under the Lanham Act, 15 U.S.C. § 1121. Further, subject matter jurisdiction exists under 28 U.S.C. § 1332, as there is diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000. This Court also has supplemental jurisdiction over claims brought under Pennsylvania state law and over all claims

that are so related to the claim upon which this Court has original jurisdiction and are part of the same case or controversy pursuant to 28 U.S.C. § 1367(a). Venue is properly found in the District pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL CLAIMS

A.  **THE GROWTH OF THE *LUKOIL* BRANDS**

8.  After the fall of the Soviet Union in the early 1990's, the petroleum industry in Russia was reorganized into privately held companies, including the Plaintiff's licensor, OAO LUKOIL. Beginning in 1993, OAO LUKOIL was founded under the laws of the Russian Federation and has rapidly grown into a fully integrated, vertically organized petroleum company involved in all aspects of the industry, including discovery and ownership of oil fields, refinery of crude oil, and retail sales of branded motor fuels. Presently, OAO LUKOIL is Russia's second largest oil company. In 2012 alone, OAO LUKOIL pumped approximately 1.8 million barrels of crude oil per day. OAO LUKOIL has operations in 40 countries around the world, including, operating throughout the Middle Atlantic/North East regions of the United States through its subsidiary, LNA, with annual worldwide sales in 2013 of $141 Billion U.S. Dollars generating a net income in excess of $7 Billion U.S. Dollars.

9.  In 2000, OAO LUKOIL entered the United States' branded motor fuel market with the acquisition of Getty Petroleum Marketing Inc. ("GPM"). By 2003, OAO LUKOIL had exclusively licensed GPM to use the *LUKOIL* brand which began replacing the GETTY brand at service stations operating throughout the Middle Atlantic/North East regions of the United States, including service stations in this District. In 2004, GPM purchased a major group of MOBIL branded service stations located in New Jersey and Pennsylvania, many of which have subsequently become *LUKOIL* branded service station.

10. LNA was formed by OAO LUKOIL in 2009 as a successor in interest to GPM to operate the *LUKOIL* business in the United States, including the marketing and sales of *LUKOIL* branded motor fuels and lubricants through a network of over 300 *LUKOIL* branded service stations in the Middle Atlantic/North East regions of the United States. LNA is the exclusive licensee for *LUKOIL* brand.

11. As part of its sales of branded motor fuels, LNA enters into franchise agreements either directly with owners and operators of retail motor fuel service station locations or with wholesalers and/or distributors who purchase *LUKOIL* branded motor fuels for supply to approved motor fuel service station owners and/or operators in their network. Pursuant to these agreements, the retail motor fuel service stations are licensed to operate under the *LUKOIL* brand, including the sale of *LUKOIL* branded motor fuels.

12. As part of their marketing for the sale of *LUKOIL* branded motor oils, a distinctive trade dress for *LUKOIL* branded service stations, including the prominent use of the primary colors red and white, large *LUKOIL* signage at the roadside and on the gas pumps, a canopy design which incorporates the *LUKOIL* brand including *LUKOIL*, three chevrons (sergeant stripes), and a distinctively shaped edge to the canopy over the gas pumps, (the "K Channel") has been developed. Each of these distinctive elements of trade dress, alone or in combination, and the collection of colors and designs create a distinctive and memorable trade dress exclusively associated with Plaintiff. Below is a depiction of trade dress of a *LUKOIL* service station.



**B.**   **U.S. TRADEMARK REGISTRATION**

13.   To protect the LUKOIL brand from infringers, OAO LUKOIL registered its various trademarks with the United States Patent and Trademark Office including:

**Registration No. 4,036,862, registered in October 11, 2011**



International Classes:

- 35: Demonstration of goods; market study; shop-window dressing; presentation of goods on all communication means for retail sales purposes; sales promotion for others; distribution of samples; dissemination of advertising material in the nature of leaflets, prospectuses, printed matter and samples; advertising; online advertising on a computer network; television advertising; administrative processing of purchase orders; supply services for third parties, namely, purchase of goods and services for third parties.

- 37: Retreading of tires; tire repair, namely, vulcanization of tires; washing of cars; washing of vehicles; anti-rust treatment for vehicles; vehicle polishing; vehicle greasing; vehicle service stations for re-fueling and maintenance; vehicle cleaning.

- 43: Hotel services; fast-food restaurants and snackbars; cafe-restaurants; cafeterias.

**Registration No. 3,750,154, registered February 16, 2011**

# LUKOIL

International Class:

35: Retail store services featuring automotive parts and accessories; retail store services featuring convenience store items and gasoline; providing information about the trading of petroleum and petroleum products.

**Registration No. 3,725,905, registered December 15, 2009**

# LUKOIL

International Classes:

04: Diesel fuel (low sulfur); motor oil

35: Retail convenience stores

**Registration No. 3,725,904, registered December 15, 2009**



International Classes:

04: Diesel fuel (low sulfur); and motor oil

35: Retail convenience stores

Registration No. 4,026,293, registered September 13, 2011



International Class:

35: Retail tire stores; retail store services featuring automotive parts and accessories; franchising, namely, offering technical assistance in the establishment and operation of retail gasoline supply services; retail gasoline supply services; retail store services featuring convenience store items and gasoline; promoting the sale of credit card accounts through the administration of incentive awards programs; promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.

14. All of the foregoing registrations are in full force and effect with LNA as the exclusive licensee. Copies of the certificates of registration are attached as Exhibits A through E, respectively.

C. **DEFENDANTS' UNAUTHORIZED USE OF PLAINTIFF'S MARKS AND TRADE DRESS**

15. Upon information and belief, Defendants are and were the owners and/or lessees of the retail motor fuel service station located at 3575 Airport Rd., Allentown, Pennsylvania 18109 (the "Allentown Station"), for all pertinent times herein. Upon information and belief, Defendants began operating the Allentown Station as a *LUKOIL* brand service station and continued to purchase gasoline for resale from LNA's authorized supplier(s). The Allentown Station ceased being an approved retail motor fuel service station under the *LUKOIL* brand upon termination of Defendants' franchise relationship with LNA and/or LNA's authorized supplier(s). Thereafter, in willful disregard of LNA's rights to the exclusive use of the *LUKOIL* brand and unbeknownst to Plaintiff, Defendants continued without LNA's authorization to operate the Allentown Station falsely and deceptively under the *LUKOIL* brand including all

8

*LUKOIL* trademarks and trade dress while selling unbranded motor fuels having no connection, association, or affiliation with Plaintiff.

16.   Plaintiff discovered Defendants' infringing and deceptive conduct in early 2014. Soon thereafter, on January 15, 2014, counsel for Plaintiff wrote to Mr. Sharma demanding that Defendants remove all indicia of the *LUKOIL* trademarks from the Allentown Station. A copy of the January 15, 2014 letter is attached hereto as Exhibit F.

17.   On numerous subsequent occasions, counsel for Plaintiff made verbal and written demands upon Defendants, demanding that Defendants immediately remove all the *LUKOIL* trademarks from the Allentown Station.

18.   By telephone, on or about February 5, 2014, Mr. Sharma informed Plaintiff's counsel that Defendants would not remove the *LUKOIL* sign from the Allentown Station unless LNA pay the cost of the removal. Mr. Sharma denied any responsibility for the removal of the *LUKOIL* marks.

19.   To date, Defendants have merely removed the *LUKOIL* sign, and the tear drop, leaving intact the well-known *LUKOIL* trade dress including the prominent use of the primary colors red and white, as well as the sergeant stripes on the canopy.

20.   LNA's representatives have recently inspected the Allentown Station. The photograph below accurately depicts, as of the date of such inspection, Defendants' willful and ongoing infringement of the registered *LUKOIL* trademarks and copying of all the elements of the distinctive *LUKOIL* trade dress:



21.     Despite having full knowledge that by failing to remove all the signage and other indicia of the *LUKOIL* brand and trade dress, Defendants have been, and continue to be, infringing the *LUKOIL* trademarks and trade dress at the Allentown Station by falsely selling unbranded motor fuels under the *LUKOIL* trademarks and distinctive *LUKOIL* trade dress.  Such continuing, knowing, and willful infringement creates a likelihood of confusion among the consuming public, by deceiving them into believing that Defendants' service station dispenses genuine *LUKOIL* brand motor fuels and other service station goods and services and that the service station is associated and connected with *LUKOIL* as an authorized retailer.

### COUNT I
### (Trademark Infringement, 15 U.S.C. §§ 1114(1))

22.     Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 21 of this Complaint as if fully set forth herein

23. The federal registration of the *LUKOIL* trademarks as evidenced by the attached certificates, together with the extensive use of the *LUKOIL* trademarks in commerce, provides Plaintiff, as exclusive licensee, with the exclusive right to use the registered marks in commerce on and in connection with the goods and services specified in the certificates.

24. Defendants' flagrant and willful infringing use of Plaintiff's registered marks without the permission of the Plaintiff is likely to cause confusion, to cause mistake, or to deceive the public as to the source or origin of the Defendants' goods and services.

25. Defendants' infringing conduct is knowing, willful, deliberate, and intended to benefit Defendants to the Plaintiff's detriment.

26. As a result of Defendants' ongoing infringement, Plaintiff has suffered and continues to suffer irreparable harm, specifically to the consuming public and to Plaintiff's business and goodwill represented by the registered trademarks.

27. By reason of the foregoing, Plaintiff, as exclusive licensee, is entitled to injunctive relief against Defendants' infringing acts pursuant to 15 U.S.C. § 1116, and, due to the willful nature of Defendants' infringement, Plaintiff is entitled to Defendants' profits, as well as damages in an amount to be determined at trial, and the costs of the present action. Plaintiff additionally is entitled, under 15 U.S.C. § 1117, to a judgment against Defendants for three times the amount of damages, together with an award of reasonable attorneys' fees.

## COUNT II
### (Trade Dress Infringement, 15 U.S.C. § 1125)

28. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29. Defendants' acts, as set forth above, constitute copying of Plaintiff's common law rights in the elements of the distinctive *LUKOIL* trade dress, in violation of the Lanham Act,

15 U.S.C. § 1125(a), by creating a false designation of origin which is likely to cause confusion, mistake, or deception, thereby causing substantial and irreparable injury to the public and to Plaintiff's business reputation and good will.

30. As a result of Defendants' willful infringement and unlawful acts, Defendants have been, and continues to be, unjustly enriched by profits that Defendants have made in connection with Defendants' commercial use of the *LUKOIL* trade dress.

31. Defendants' continuing infringement has caused and, absent injunctive relief, will continue to cause irreparable harm to Plaintiff. Plaintiff has no adequate remedy at law. Accordingly, Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendants from engaging in further acts of infringement pursuant to 15 U.S.C. § 1116.

32. As a direct and proximate result of Defendants' willful and ongoing conduct, Plaintiff has suffered and is entitled to monetary damages in an amount to be determined at trial. Plaintiff is also entitled to the costs of the present action, including reasonable attorneys' fees, as well as pre- and post-judgment interest as provided in 15 U.S.C. § 1117.

33. Because Defendants' infringement is willful and in conscious disregard for Plaintiff's trade dress, Plaintiff is entitled to the trebling of damages in order to provide just compensation.

## COUNT III
### (False Advertising, 15 U.S.C. § 1125(a)(1)(B))

34. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. Plaintiff's exclusive use of the registered marks and trade dress and its extensive use and promotion thereof have established in the minds of the general public a strong